Pascual **VALENZUELA FUENTES,** et al. **Plaintiffs**

v.

**DICTAPHONE CORPORATION** Defendant

No. CIV. 02–2751(SEC).

United States District Court, D. Puerto Rico.

Aug. 31, 2004.

Elaine Rodriguez–Frank, San Juan, PR, Torres–Santiago, Conjugal Partnership Valenzuela–Torres, Plaintiffs.

Gilberto F. Benitez–Colon, Rivera Tulla & Ferrer, Hato Rey, PR, for Dictaphone Corp., Defendant.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is Defendant's motion for summary judgment (**Docket# 22**) and Plaintiffs' opposition thereto (**Docket # 42**). After carefully studying the parties' arguments, as well as the applicable law, we find that Defendant's motion for summary judgment must be **GRANTED.**

**Procedural Background**

On December 2, 2002 Defendant removed to federal court on grounds of diversity Plaintiffs' action for compensation provided under Law 21 of 1990, 10 L.P.R.A. § 279. Plaintiffs allege in their complaint that Defendant Dictaphone Corporation ("Dictaphone" or "Defendant"), Plaintiff Pascual Valenzuela's ("Plaintiff") employer since 1985, closed its sales facilities in Puerto Rico in 2000, thus terminating the employer-employee relationship with Plaintiff and subsequently entered into a sales representation agreement with him, only to terminate said agreement two years later without just cause. *See* Docket # 1.

Defendant posits that it is entitled to summary judgment for several reasons. First, it argues that Plaintiffs cannot meet their burden of establishing the elements required to succeed in a Law 21 claim since said law is not applicable to employees and Plaintiff can present no probative evidence that he had entered into an exclusive sales representation agreement with Defendant. Second, Defendant purports that even if Plaintiff established that he entered into an oral exclusive sales representation contract with Dictaphone, there was just cause to terminate the alleged agreement because Plaintiff did not fulfill the reasonable quota requirements of the alleged agreement, as described by Plaintiff himself. Finally, Defendant asserts that Plaintiff has failed to plead a cause of action as he did not allege in the complaint that he had entered into an exclusive sales representation agreement with Dictaphone as required by Law 21.

Plaintiffs' first opposition to Defendant's motion was struck by the Court upon motion from Defendant for noncompliance with Local Rule 56. *See* Dockets 39 & 52. Plaintiffs subsequently filed a second opposition (**Docket # 42**). Although Defendants again moved to strike, this time for untimeliness as well as noncompliance with the local rules, the Court did not strike the second opposition. However, it reserved

its ruling on whether or not Plaintiffs' statement of contested facts complied with Local Rule 56 (**Docket # 52**). Therefore, we clarify that although the Court will consider Defendant's motion as opposed, it will only accept statements in Plaintiffs' opposition that are adequately supported by the record and comply with the anti-ferreting rule.

**Standard of Review**

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim ... is asserted ... may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986); *NASCO, Inc. v. Pub. Storage, Inc.,* 29 F.3d 28 (1st Cir.1994). "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." 10A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d* § 2725, p. 401.

In this regard, the First Circuit Court of Appeals has noted that for a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the non-moving party. *U.S. v. One Parcel of Real Prop.,* 960 F.2d 200, 204 (1st Cir.1992); *see also Boston Athletic Assn. v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989); *Medina–Muñoz v. R.J. Reynolds Tobacco,* 896 F.2d 5, 8 (1st Cir.1990) ("[a] 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most favor-

able to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.") (citations omitted).

By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Gov't Dev. Bank of P.R.,* 27 F.3d 746, 748 (1st Cir.1994). "A fact is material if it tends to resolve any of the issues that have been properly raised by the parties." Wright, Miller & Kane, *supra,* § 2725 at p. 419. "Not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." *Martínez v. Colón,* 54 F.3d 980, 983–984 (1st Cir.1995).

In addition, when determining whether to grant summary judgment, the Court may not weigh the evidence. *Casas Office Machs., Inc. v. Mita Copystar Am., Inc.,* 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (*citing Greenburg v. P.R. Mar. Shipping Auth.,* 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machs.,* 42 F.3d at 684.

While the moving party has the burden of initially establishing that there is "an absence of evidence to support the nonmoving party's case," *Maldonado–Denis v. Castillo–Rodríguez,* 23 F.3d 576, 581 (1st Cir.1994); the nonmovant has a "corresponding obligation to offer the court more than steamy rhetoric and bare conclusions." *Lawton v. State Mut. Life As-*

*surance Co. of Am.*, 101 F.3d 218, 223 (1st Cir.1996). Furthermore, "the nonmovant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue. ... Failure to do so allows the summary judgment engine to operate at full throttle." *Id.; see also Kelly v. United States*, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); *Medina–Muñoz*, 896 F.2d at 8, (*quoting Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.").

 Local Rule 56(b), moreover, requires the moving party to file annexed to the motion "a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." Unless the non-moving party controverts this statement, all the material facts set forth therein "shall be deemed to be admitted." *Id.; Cosme–Rosado v. Serrano–Rodriguez*, 360 F.3d 42 (1st Cir.2004). This is the so-called "anti-ferret rule." *See, e.g., Orbi, S.A. v. Calvesbert & Brown*, 20 F.Supp.2d 289, 291 (D.P.R.1998). While failure to comply with this rule does not automatically warrant the granting of summary judgment, "it launches the nonmovant's case down the road toward an early dismissal." *Tavárez v. Champion Prods., Inc.*, 903 F.Supp. 268, 270 (D.P.R.1995).

**Applicable Law and Analysis**

 Because this case arises out of our diversity jurisdiction, we apply the laws of Puerto Rico to the instant action. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Law 21 protects Puerto Rico's sales representatives from arbitrary dismissals once they have created an auspicious market for their employers. Because we find that, assuming for purposes of this Opinion and Order that Plaintiff and Defendant had entered into an exclusive sales representation agreement, Defendant had just cause to terminate Plaintiff, we limit our inquiry to this defense.

 Under Law 21 a sales representative may be terminated for just cause. "Just cause" includes "[n]oncompliance of any of the essential obligations of the sales representation contract by the sales representative." 10 L.P.R.A. § 279(d). It is uncontested that the sales quota is one of those essential obligations. Plaintiffs allege the existence of varying sales quotas, none which Plaintiff Valenzuela consistently met.[1] In the complaint they allege that Plaintiff Valenzuela had to maintain a minimum annual sales quota of $800,000 for which he would receive ten percent (10%) of the sales price (**Docket # 1, ¶¶ 11–12**). In his deposition however, Plaintiff stated that he had to meet a monthly quota of $50,000 worth of equipment in addition to maintenance contracts for those products, which would be an extra $10,000 to $15,000 per month (**Docket # 20, Exh. # 9, pp. 109–11**). In their opposition to summary judgment Plaintiffs again address this issue and this time state that when the contract was executed, there was no agreement on a specific sales quota, but that by the year 2002 Plaintiff was required to sell a total of $800,000 annually composed of $600,000 of health care products and

---

1. Plaintiff does not argue at any point that the sales quota was unreasonable. In fact, in his complaint, he avers that he maintained the required sales quota. *See* Docket # 1, ¶ 12.

$200,000 in service agreements (**Docket # 42**). The commission in turn would range from ten to twelve percent (10–12%). *Id.*

Defendants included with their motion Plaintiff's sales reports for the years 2000 through 2002. These reports indicate that Plaintiff's yearly sales totals were $129,673 in 2000; $235,540 in 2001; and $164,996 in 2002[2] (**Docket # 20, Exh. # 4**). In no year is he even remotely close to his required sales quota. If we examine his sales totals by month, it appears that he only met the monthly quota in March of 2001 and in March of 2002. *See id.* Plaintiffs do not contest this. In fact, they rest their only supported challenge on the uncontested fact that he complied with his quota requirements in March of 2002 (**Docket # 42, ¶ m**). Thus, it remains undisputed that, even using the figure most beneficial to Plaintiff, he did not meet his quota requirements for the majority of the duration of his alleged sales representation contract. That being the case, Defendant had just cause to terminate Plaintiff Valenzuela. Therefore, even if Plaintiffs could overcome the many hurdles required of them and establish that there was an exclusive sales representation contract, Defendant had just cause in terminating Plaintiff. Consequently, we grant Defendant's motion for summary judgment and dismiss the above-captioned matter.

**Conclusion**

For the reasons herein stated, we hereby **GRANT** Defendant's motion for summary judgment and **DISMISS** the above-captioned matter. Judgment shall be entered accordingly.

**SO ORDERED.**

2. It is unclear when exactly the alleged sales representation contract began. In their opposition to the motion for summary judgment, Plaintiffs allege that Plaintiff was "laid-off" in June of 2000 and that he was subsequently offered the opportunity to continue selling Defendant's products in Puerto Rico (**Docket # 42**). However, with their opposition, Plaintiffs present letters from Plaintiff Valenzuela's accountant requesting a change of status in the W–2 form so that he would be marked as earning commission income and not salary (**Docket # 42, Exh. 13**). Interestingly enough, the first of these letters is dated January 12, 2000, half a year prior to Plaintiff's alleged termination. *See id.*